IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| WILLIAM M. SOLOMON and HEATHER A. SOLOMON, : *Debtors* : | Case No. 09-22585-TPA <br><br> Chapter 13 |
| BANK OF AMERICA, : *Movant* : : | Related to Doc. No. 70 |
| v. : : | |
| WILLIAM M. SOLOMON, : HEATHER A. SOLOMON and : RONDA J. WINNECOUR, : *Respondents* : | |

*Appearances:*   Warner Mariani, Esq., for the Movant

## MEMORANDUM OPINION

The issue presently before the Court is whether to permit a motion to pay unclaimed funds in a dismissed case to be filed and acted upon without requiring an accompanying motion to reopen the case and the payment of a reopening fee. For the reasons stated below, at least under the facts presented, the Court concludes that a motion to reopen and payment of a reopening fee are necessary.[1]

This Chapter 13 case was filed on April 10, 2009, and a plan was finally confirmed on April 15, 2010. On May 19, 2011, following the filing of a certificate of default in plan payments

---

[1] The Court has jurisdiction over this matter pursuant to *28 U.S.C. §1334*. This is a core matter under *28 U.S.C. 157(b)(2)(A)* and *(O)*.

1

and a request for dismissal by the Trustee, an order was entered dismissing the case without prejudice. The case was marked as closed on July 8, 2011.

On August 9, 2012, a *Motion to Pay Unclaimed Funds Under 28 U.S.C. §2042* ("Motion") was filed by Bank of America ("BOA") at Doc. No. 63. The *Motion* alleged that during the case the Trustee issued a dividend check in the amount of $13,683.45 to a creditor in the case, Wilshire Credit Corp.[2] It further alleged that this check was never cashed by the creditor, hence, on June 29, 2011 the Trustee delivered that amount to the Clerk of this Court as unclaimed funds pursuant to *11 U.S.C. §347(a)*. The *Motion* asked for an order directing the Clerk to pay the amount in question to BOA, c/o The Locator Services Group, Ltd. Despite the fact that the case had been closed for more than a year, the *Motion* was not accompanied by a motion to reopen the case, nor was a reopening fee ($235.00) paid by BOA.

On August 21, 2012, the Court, noting that the case had been closed, issued an order dismissing the *Motion* on jurisdictional grounds, without prejudice to being refiled along with a motion to reopen the case and a new filing fee. Rather than do that, BOA responded on August 24, 2012, by filing an **Amended Motion to Reconsider Denial of Motion to Pay Unclaimed Funds Under 28 U.S.C. §2042** ("Reconsideration Motion") at Doc. No. 70,[3] the matter presently up for decision. BOA was directed to and did file a brief in support of the *Reconsideration Motion*, and oral argument was heard on November 9, 2012.

---

[2] Wilshire Credit Corp. was alleged to be a subsidiary of BOA. Additionally, it was alleged that BOA had appointed The Locator Services Group, Ltd. as its attorney-in-fact to pursue payment of the funds at issue.

[3] The original version of the *Reconsideration Motion* was filed on August 23, 2012, but it was dismissed for non-compliance with *Local Rules* and the refiled in an amended version the next day.

BOA has advanced 3 main arguments in support of its position. First, as alleged in the *Reconsideration Motion*, and as the Court itself readily acknowledges, in some other prior closed cases in this Court creditors have been able to successfully file similar motions to pay unclaimed funds without being required to also file a motion to reopen and pay a reopening fee. Second, BOA has cited cases from other bankruptcy courts which have allowed the practice. Third, BOA argues that the Court holds these unclaimed funds as a statutory trustee for rightful claimants and it asserts that requiring a motion to reopen and filing fee will impermissibly discourage claimants from coming forward if it will cost them more to obtain the funds than they will recover. None of these arguments is ultimately persuasive in the present case, although the final one is such that under different circumstances the Court would possibly agree to waive the required reopening fee for small claim amounts to avoid the dilemma posed by BOA.

As to the first argument, BOA has not pointed to any decision by any of the judges of this Court expressly holding that a motion to reopen and a filing fee are not required to move for the payment of unclaimed funds in a closed case. Instead, BOA relies upon the fact that in other cases claimants have not had this procedure challenged, as was done in this case when the *Motion* was dismissed without prejudice. The Court has previously advised BOA that it finds this past history of "minimal persuasiveness." See *Order* of October 3, 2012 at fn. 1, Doc. No. 74. The mere fact that a practice has not been challenged in the past is not a sufficient reason to continue to allow it in the future once it is challenged.

A good example of this principle can be found in *In re Trahan*, 460 B.R. 207 (Bankr. C.D. Ill. 2011). In that case Jeffrey Richardson was appointed as the Chapter 7 Trustee for the

debtor. After administering the case he filed a report of no distribution saying he had found no assets and the case was closed in due course. Richardson subsequently learned that the debtor would be receiving an inheritance and he filed a motion to reopen the case, which was granted. Thereafter, Richardson in effect resumed acting as a Trustee in the case although he was never formally reappointed so. He requested that a claims bar date be reset, and when that date passed without any claims having been filed he moved for authority to return the inheritance funds to the debtor.

At that point the bankruptcy court *sua sponte* issued an order requiring Richardson and the United States Trustee to explain how Richardson had any authority to act when he had not been reappointed as a trustee pursuant to *Fed.R.Bankr.P. 5010* after the case had been reopened. During the course of its opinion on the matter, the *Trahan* court noted that during the previous three-plus years in the court there had been 19 case reopenings wherein it would have been likely the court would have found that the appointment of a trustee was necessary. In none of those cases was a request ever made under *Rule 5010* for authorization for the UST to appoint a trustee. Despite that, in 14 of the reopened cases the UST docketed a notice of appointment of a trustee after the reopening, and in the other 5 cases the previously discharged trustee filed documents and acted as a trustee despite not having received a notice of reappointment. All of this happened without any questioning by the court, until the *sua sponte* order was issued in the *Trahan* case. The court did not find this prior history to provide any justification or defense to the improper procedure, stating:

> The requirements of *Rule 5010* were ignored by Mr. Richardson in this case and have been repeatedly ignored by the UST in many cases reopened by this Court. The remedy on a going-forward basis is for all concerned to pay much closer attention to the Bankruptcy Code and Rules and not to assume that, because something has always been done a certain way, it is being done correctly.

460 B.R. at 213.

This Court agrees with the view expressed in *Trahan*. The fact that in other cases in the past creditors have been successful in obtaining unpaid funds in closed cases without first reopening them does not mean that result was correct. *See also, e.g., In re Foreclosure Cases*, 2007 WL 4589765 (S.D. Ohio 2007) (fact that counsel had previously brought hundreds of foreclosure actions with no affidavit being filed along with the complaint, without the practice being questioned, was immaterial and a "that's the way I've always done it" argument was not persuasive).

BOA's second argument is to point to cases from other courts which have adopted the position advocated by BOA. The chief case relied upon by BOA in that regard is *In re Taylor*, 216 B.R. 515 (E.D. Pa. 1998). The Court agrees that BOA has accurately characterized the *Taylor* case as one in which the bankruptcy court explicitly decided that it would allow an application to distribute unclaimed funds in a closed case to proceed without reopening the case. The Court has carefully reviewed *Taylor*, and the short answer is that this Court is not bound by *Taylor* and does not find it terribly persuasive as a support for BOA's position. At best, *Taylor* can be said to stand for the proposition that a bankruptcy court *may* decide an unclaimed funds motion without reopening a case, not that it *must* do so.

Moreover, this Court finds that the decision in *Taylor* is questionable even to the limited extent stated above because it appears to attribute far too little significance to the fact that a case is no longer open. For instance, the *Taylor* court stated that:

> ... the fact that a case is or is not closed merely relates to its administrative status, which does not affect a bankruptcy court's jurisdiction to determine matters relevant to the case.

216 B.R. at 521. In the recent case of *In re Iannini*, C.A. No. 2:12-cv-225 (W.D. Pa. Nov. 30, 2012), however, the court made clear that the condition of a case as open versus closed/dismissed is jurisdictionally significant, finding that "a bankruptcy court, in the normal course, has no jurisdiction to hear such post-dismissal disputes." The particular "dispute" at issue in *Iannini* related to an attorney fee petition, and the court there found that once the case was dismissed without an explicit retention of jurisdiction set forth in the dismissal order, the bankruptcy court lacked the jurisdiction to decide a fee petition because the case had not been reopened ("... it is generally accepted that a bankruptcy court has no power to decide a bankruptcy dispute after the case is closed unless it is first reopened").

BOA also states that the outcome in *Taylor* is consistent with the practice of bankruptcy courts throughout the United States which have held that motions seeking to recover unclaimed funds are only administrative in nature. However, the only case cited by BOA for that proposition is *American Express Centurion Bank v. Hendrix*, 411 B.R. 539 (N.D. Miss. 2009). That case deals only with the issue of whether the act of seeking a disbursement of unclaimed funds can be performed by a non-lawyer, the *Hendrix* court finding that it can.[4] The *Hendrix* case says nothing one way or the other about whether a closed case must be reopened before a motion seeking unclaimed funds can be decided, so it is of little, if any, relevance here.

The Court also disagrees with BOA's characterization of the *Motion* (or any similar motion seeking disbursement of unclaimed funds) as a merely "administrative" matter. This term was seemingly chosen to portray as minimal any effort that will be required on the part of the Court

---

[4] Although strictly speaking not relevant for present purposes, for what it is worth, the holding in *Hendrix* appears to be contrary to what the result would be in this Court on that same issue.

to resolve the *Motion*, perhaps with an overall goal of demonstrating that it would be unreasonable to require a filing fee to be paid for such a routine matter that will require little in the way of judicial resources.  But this is not just a routine matter that can be processed with no thought.

For one thing, it is not even certain that the Court has the power to reopen a dismissed case. See *Iannini*, *supra* (noting the distinction between a case that has been "closed" and one that has been "dismissed" for failure to make Ch. 13 plan payments, leaving open the question of whether a bankruptcy court's power to reopen a case pursuant to *11 U.S.C. §350(b)* extends to dismissed cases).  It is also unclear whether BOA has standing to pursue the *Motion* on behalf of its subsidiary, which is identified in the *Motion* as the actual creditor in this case.  Some courts have found a lack of standing in these circumstances.  *See, e.g., In re Applications for Unclaimed Funds Submitted in Cases Listed on Exhibit "A"*, 341 B.R. 65, 70 (Bankr. N.D. Ga. 2005) (court cannot grant an application of a parent corporation for payment of funds that belong to its subsidiary; the subsidiary itself is the only entity entitled to the funds and it must seek them).  Yet another possible issue is whether the Debtors themselves may have a claim to the funds in question in light of the recent decision in *In re Michael*, 699 F.3d 305 (3d Cir. 2012) (undistributed funds held by Ch. 13 Trustee at the time of conversion to Ch. 7 must be paid to the debtor).  In short, any argument that a motion to reopen and a fee should not be required because this is a simple "administrative" matter is rejected.

As a final argument, BOA raises the prospect that the requirement of filing a motion to reopen and paying a new filing fee will effectively shut out small claimants since the cost of bringing the proceeding would exceed the funds being sought.  This is, of course, a strictly

hypothetical argument as pertains to the present case since the funds at issue are over $13,000, making the cost of a motion and filing fee *de minimus* in comparison. Although this argument will not help BOA here, it does raise a good point that is worthy of some further comment.

As a starting point, the Court notes that Congress has only acted to specify the fees that must be paid to commence a case under the various chapters of the bankruptcy code and the ongoing United States Trustee fees that must be paid during a Chapter 11 cases. *See, 28 U.S.C. §1930(a)*. Congress has deferred to the Judicial Conference of the United States with respect to all other bankruptcy-related fees, providing that the Judicial Conference "may prescribe additional fees in cases under title 11" of the same kind as it does for district court cases. *See, 28 U.S.C. §1930(b)*.

The Judicial Conference has exercised its authority under *Section 1930(b)* by issuing a *Bankruptcy Court Miscellaneous Fee Schedule* ("Fee Schedule"). See, www.uscourts.gov/FormsAndFees/Fees/BankruptcyCourtMiscellaneousFeeSchedule.aspx. This *Fee Schedule* provides for a reopening fee equal to the case commencement fee for the various chapters as set forth in *Section 1930(a)*. There are only three (3) exceptions noted when a reopening fee will not be required:

- to permit a party to file a complaint to obtain a determination of dischargeability of a debt;

- when a debtor files a motion to reopen a case based upon an alleged violation of the discharge injunction; and

- when the reopening is to correct an administrative error.

8

See *Fee Schedule* at Item 11. None of these exceptions is applicable here.[5]

It would, of course, have been a simple matter for the Judicial Conference to include an exception to permit a motion to pay unclaimed funds to be filed without requiring a reopening fee. In the Court's view, the failure to include such an exception implicates the doctrine of *inclusio unius est exclusio alterius*, *i.e.*, the inclusion of one is the exclusion of another. *See, e.g., In re Covenant at South Hills, Inc*., 410 B.R. 426, 431 (Bankr. W.D Pa. 2009) (defining doctrine); *Reflectone, Inc. v. Dalton* 60 F.3d 1572 (Fed. Cir. 1995) (inclusion of only one exception implied the exclusion of any others). In further support of this view, see also, the *Bankruptcy Fee Compendium III* (November 2011 edition), a publication of the Judicial Conference whose purpose is to "guide bankruptcy clerks in collecting fees." Consistent with the *Fee Schedule*, the *Compendium* provides that the Clerk "must" collect a reopening fee unless the reopening is either to correct an administrative error, or to file an action related to the discharge. See *Compendium* at 68. Thus, the Court finds that as a general rule a reopening fee must be paid to reopen a closed case, subject to certain narrow exceptions not applicable here.

By statute the Court is permitted to waive fees for creditors "in accordance with Judicial Conference policy." *28 U.S.C §1930(f)(3)*. The Court is not aware of any specific policy having been implemented by the Judicial Conference with respect to the waiver of reopening fees. The *Fee Schedule* does permit a reopening fee to be waived by the Court "under appropriate circumstances," without attempting to define what such circumstances might be. Certainly, if the

---

[5] The Court cannot except this as a matter involving "administrative error." Neither the Trustee nor the Court did anything that might possibly be construed as an error with respect to the unclaimed funds at issue. To the extent there was any "fault" involved, it was solely that of the BOA or its subsidiary for not timely negotiating the check upon its receipt.

amount of the unclaimed funds being held by the Clerk is small in relation to the reopening fee and incidental transactional expenses, say less than two times the fee, the Court would at least be receptive to hearing an argument that appropriate circumstances existed for a waiver of the fee.[6] Alternatively, the Court could potentially act for cause to waive a reopening fee pursuant to *11 U.S.C. §105(a)*, which gives it the power to issue any order necessary or appropriate to carry out the provisions of the *Bankruptcy Code*. The hypothetical scenario laid out by BOA is not before the Court in the present case, however, and the Court goes no further in making any ruling in that regard.

The Court will close with a few words reiterating what it said in *In re Henretty*, 456 B.R. 224, 227 (Bankr. W.D. Pa. 2011) that may be helpful in explaining why it has "called" BOA on this matter. As noted in that case, the heavy reliance on filing fees to self-fund the bankruptcy system provides a strong public policy consideration weighing in favor of requiring debtors to pay filing fees in all instances except when they clearly meet the statutory criteria for a waiver. There is no good reason why that same public policy consideration should not equally apply with respect to fees required of creditors. Perhaps in years past the funding level for the Court was such that it was not as vigilant as it should have been in ensuring that all required fees were paid, which would explain why motions seeking unclaimed funds in closed cases could slip by without having to pay a fee to reopen. The Court has entered a new age of austerity in funding, however, one that has caused it to carefully scrutinize its finances on both the expenditure and receipt sides of the ledger.

---

[6] Even were a reopening fee to be waived, however, that would not eliminate the need to file a motion to reopen the case.

Requiring motions to reopen and filing fees that should by right have been required all along is one result of that new scrutiny, and a necessary one for the continued effective operation of the system.

    An appropriate order follows.

Dated: January 15, 2013

                                        Thomas P. Agresti, Chief Judge
                                        United States Bankruptcy Court

Case administrator to serve:
    Debtors
    Kenneth Steidl, Esq.
    Ronda Winnecour, Esq.
    Office of the United States Trustee
    Warner Mariani, Esq.